1

**GLUCK LAW FIRM P.C.**
Jeffrey S. Gluck (SBN 304555)

2
2125 S. Beverly Drive
Los Angeles, California 90034

3
Telephone: 310.776.7413

4
**ERIKSON LAW GROUP**
David Alden Erikson (SBN 189838)

5
Antoinette Waller (SBN 152895)
200 North Larchmont Boulevard

6
Los Angeles, California 90004
Telephone: 323.465.3100

7
Facsimile: 323.465.3177

8
Attorneys for Plaintiff

9

10
UNITED STATES DISTRICT COURT

11
CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

12

| | |
|---|---|
| 13  LEONARD MCGURR, professionally known as "Futura," an individual; | Case No. |
| 14 | **COMPLAINT FOR DAMAGES, RESTITUTION AND INJUNCTIVE** |
| 15  Plaintiff, | **RELIEF** |
| 16  v. | |
| 17  THE NORTH FACE APPAREL CORP., a Delaware corporation; V.F. | **DEMAND FOR JURY TRIAL** |
| 18  CORPORATION, a Pennsylvania corporation; and DOES 1-10 inclusive. | |
| 19  Defendants. | |

20

21
    Plaintiff Leonard McGurr, referred to by his professional pseudonym

22
"Futura" hereby complains against Defendants The North Face Apparel Corp.

23
("North Face"), V.F. Corporation ("VF"); and Does 1-10 inclusive (collectively

24
referred to as "Defendants") as follows.

25

26

27

28

COMPLAINT

1

## SUMMARY OF THE CASE

2      1.      Plaintiff Futura is a celebrated and highly acclaimed artist and designer.

3    He began his career in the 1970s as one of the pioneers of street art in New York

4    City, alongside Jean-Michel Basquiat, Keith Haring, and Kenny Scharf. The *New*

5    *York Times* recently called him "one of the progenitors of graffiti art, and one of its

6    most recognizable figures." Over the years, Futura has only grown in importance

7    and recognizability. In fact, he is more in demand than ever *right now*—and is

8    currently the subject of two notable exhibits, including a major solo show, in New

9    York City. Below is a photograph of the solo show, which appeared last month in

10    the *Times*.

11



25      2.      Over the decades, Plaintiff has become known for a signature element

26    that appears over and over in his work: a particular stylized depiction of an atom

27    (the "Design"). The symbol can be seen in every work in the photo above, and

28    below are other examples of its use over the past fifty years. Often, Futura has used

COMPLAINT

1  the atom Design as a traditional logo, to identify himself as the source of consumer

2  products he offers, including apparel.

3

4

5

  

6

7

8

9

10

11      3.      A number of revered brands pay to leverage the Futura persona in their

12  marketing, in order to associate themselves with his brand of urban cool. In this

13  regard, he has previously collaborated with Nike, Uniqlo, LVMH, the New York

14  Mets and Yankees, and Comme de Garcon—and even defendant *The North Face*.

15      4.      In 2019, North Face inexplicably began using a copy of the atom

16  Design as the logo for a new line of North Face apparel and fabric technology,

17  without Futura's consent. The North Face logo is shown below right, alongside a

18  comparative exemplar of the atom Design.

19

20

21

22   

23

24

25

26

27

28         *Plaintiff's "Future Icon" Design*                    *Defendants' Logo*

COMPLAINT

5.    If their Logo weren't enough to conjure FUTURA in the mind of a consumer, Defendants call their new apparel line "FUTURELIGHT." In other words, the similarity of the graphic designs and the names is no coincidence: Defendants purposefully invoked Plaintiff in order to suggest an association with him.

6.    Although North Face had previously produced apparel in collaboration with him, Defendants made no attempt to obtain authorization from Futura, or even inform Futura, before making extensive use of the infringing logo in a $20 million advertising campaign.

## JURISDICTION AND VENUE

7.    Plaintiff brings this action for copyright infringement (17 U.S.C. Section 101 et seq.), unfair competition under the Lanham Act, and related claims.

8.    This Court has original subject matter jurisdiction over this action and the claims asserted herein, pursuant to 28 U.S.C. Section 1331 ("federal question jurisdiction") and 1338(a)-(b) ("patent, copyright, trademark and unfair competition jurisdiction") in that this action arises under the laws of the United States and, more specifically, Acts of Congress relating to patents, copyrights, trademarks, and unfair competition. This Court has subject matter jurisdiction over the state law claims pursuant to 28 U.S.C. Section 1367(a)("supplemental jurisdiction") in that they are so related to the federal law intellectual property claims in the action that they form part of the same case or controversy under Article III of the United States Constitution.

9.    Defendants are subject to the personal jurisdiction of the Court because they do or transact business in, have agents in, or are otherwise found in and have purposely availed themselves of the privilege of doing business in California and in this District, and because the alleged misconduct was directed to California and this district.

COMPLAINT

1    10.    Venue is proper in this District pursuant to 28 U.S.C. Section

2  1391(b)(1)-(3) because a substantial part of the events or omissions giving rise to

3  the claims occurred in this District in that, *inter alia*, the infringing products were

4  sold here.

5

6                                    **THE PARTIES**

7    11.    Plaintiff Leonard McGurr is and at all times relevant herein a resident

8  of Brooklyn, New York.

9    12.    Defendant North Face Apparel Corp. is a Delaware corporation doing

10 business in Los Angeles County. North Face products are sold at more than 5,000

11 stores across 50 countries.

12    13.    Defendant V.F. Corporation is a Pennsylvania corporation, and is the

13 parent company of North Face. On information and belief, V.F. Corporation exerted

14 control over North Face with respect to acts and omissions related to this action; and

15 benefitted from those acts and omissions.

16    14.    Plaintiff is ignorant of the true names and capacities of the Defendants

17 sued herein as Does 1-10, inclusive, and therefore sues said Defendants by such

18 fictitious names. Plaintiff will amend this Complaint to allege the true names and

19 capacities when the same has been ascertained. Plaintiff is informed and believes,

20 and thereon alleges, that each fictitiously-named Defendant is responsible in some

21 manner for the occurrences herein alleged, and that Plaintiff's damages as herein

22 alleged were proximately caused by their conduct.

23    15.    Each of the Defendants acted as an agent for each of the other

24 Defendants in doing the acts alleged and each Defendant ratified and otherwise

25 adopted the acts and statements performed, made or carried out by the other

26 Defendants so as to make them directly and vicariously liable to the Plaintiff for the

27 conduct complained of herein.

28

                                    5                                    COMPLAINT

1

**GENERAL ALLEGATIONS**

2         16.     Futura is a renowned artist. In the 1970's, he was a pioneer in graffiti

3    and street art. In the decades that followed, Futura has become internationally

4    known for his unique abstract painting style. As described by the *New York Times*,

5    he moved the street art medium forward in the 1980's through "his use of

6    abstraction, expanding the form beyond lettermaking to include impressionistic

7    fields of color, blooming nimbuses that seemed to be in motion even when holding

8    still."[1]

9         17.     Futura's work has been exhibited in the most respected contemporary

10   art museums in the United states, such as the Museum of Contemporary Art

11   (MOCA) in Los Angeles, and The Museum of Modern Art in New York. He has

12   also exhibited around the world, including at the Boymans Museum in Rotterdam

13   and the Gallery Du Jour in Paris. He has been included in several major museum

14   shows focusing on street art, including "Art from the Streets" exhibition at the

15   ArtScience Museum in Singapore, and the "Beyond the Streets" show in Los

16   Angeles in 2018.

17        18.     Futura's long and illustrious career has reached new heights. He is now

18   more popular and in demand than ever before. As mentioned, he has two major

19   shows in New York City at the moment, including a major solo show. In addition,

20   his long history of collaborating with top brands looking for an association with him

21

22   [1] Street art is no longer a small or alternative segment of the art world. It is legitimate art, certainly
     deserving of the customary copyright protection afforded to the visual arts. Indeed, it is fair to say
23   that more people are enthusiasts of street art today than of any other genre, including French
     Impressionism and abstract expressionism. This is not to say that street art is only for the masses.
24   Many museum shows have been devoted to the subject, including the Los Angeles Museum of
     Contemporary Art's groundbreaking *Art in the Streets* exhibition in 2011, which has been
25   estimated to be the best attended exhibit in the museum's history. *Art in the Streets*, *available at*
     https://en.wikipedia.org/wiki/Art_in_the_Streets. The most famous street artist is Banksy, whose
26   works can sell for millions of dollars, and are often extracted from random walls on which they
     appear.
27

28

COMPLAINT

1  has grown exponentially. Recent collaborations include Nike, Comme Des Garçons,

2  Off White, BMW, and Levi's.

3          19.      A key and signature element running through Futura's work is the atom

4  Design. It has long played a prominent role in Plaintiff's fine art. In addition to

5  original artwork, Futura has produced a variety of consumer products featuring the

6  Design, which functions as an indicator of the source of the product. Plaintiff also

7  uses the Design as a signature/logo in his art, and is known for displays of the

8  Design on its own (including sometimes as "stickers"), unattached to a consumer

9  product or art pieces, as a work of art itself and as a promotional device.









COMPLAINT

1    20.    Without Plaintiff's knowledge, authorization, or consent, Defendants

2  began using the Design as the logo for their new "FUTURELIGHT" line of North

3  Face apparel and fabric technology. Defendants' infringing apparel (the

4  "Collection," examples shown below) features a copy of the Design.

5

6



7

8

9

10

11

12

13



14

15

16

17

18

19

20

21

22

23

24

25    21.    Defendants' actions have caused, and will continue to cause, damage

26  and irreparable harm to Plaintiff (as described above) and are likely to continue

27  unabated, thereby causing further damage and irreparable harm to Plaintiff, unless

28  preliminarily and permanently enjoined and restrained by the Court.

22.     Plaintiff is informed and believes, and thereon alleges, that Defendants' alleged conduct was, and continues to be, intentional, deliberate, willful, wanton, and committed with the intention of injuring Plaintiff and depriving Plaintiff of Plaintiff's legal rights; was, and is, despicable conduct that subjects Plaintiff to a cruel and unjust hardship; and was, and continues to be, undertaken with oppression, fraud and malice. Accordingly, Plaintiff is entitled to an award of punitive or exemplary damages.

23.     Defendants infringed as described above, and used copies of Plaintiff's signature atom Design in interstate commerce.

**First Claim for Relief for Unfair Competition Under Section 43(a) of**
**The Lanham Act (15 U.S.C. § 1125(a))**
**(Against All Defendants)**

24.     Plaintiff incorporates by this reference all prior paragraphs as if set forth in full in this cause of action.

25.     As described above, the Design is an element of Plaintiff's artwork, products, and brand identity, and acts as a source identifier in that consumers have come to recognize the Design as being associated with Plaintiff, and indicating Plaintiff as the source of associated goods and services. The goodwill and reputation associated with the Design, and its secondary meaning, is significant.

26.     The Design, as an indicator of source, is strong, fanciful, non-functional, distinctive, and inherently distinctive. The Design has become distinctive of Plaintiff's artwork, brand, and products, and has acquired secondary meaning among relevant consumers and the public generally.

27.     As alleged above, Defendants produce, market, merchandise and promote products improperly incorporating the Design, which is likely to cause consumers to mistakenly believe that Defendants' products are associated with Plaintiff. Defendants use of the Design is likely to cause confusion or mistake or

COMPLAINT

1    deception of purchasers as to the source of Plaintiff's and/or Defendants' goods.

2    Defendants' conduct will damage Plaintiff's ability to enjoy, maintain and exploit

3    his hard-won brand-recognition.

4           28.    Although he maintains the highest standards of quality, Plaintiff has no

5    control over the type or quality of the goods provided by Defendants. Goods of low

6    quality or mass-market appeal, if associated with Plaintiff, could damage his brand's

7    reputation. Further, such loss of goodwill with respect to customers and retailers has

8    caused and will cause decreased revenues and decreased profits for Plaintiff. In

9    addition, Defendants' use of the Design diminishes the distinctiveness of Plaintiff's

10    work and brand, negatively affecting its ability to connote a single source of

11    Plaintiff's products and the Design.

12           29.    By reason of Defendants' acts of unfair competition as alleged herein,

13    Plaintiff has suffered and will continue to suffer substantial damage to his business

14    in the form of diversion of trade, loss of profits, and a dilution in the value of his

15    rights and reputation, all in amounts which are not yet ascertainable but which are

16    estimated to be not less than the jurisdictional minimum of this court. As a result of

17    Defendants' misconduct as alleged herein, Plaintiff's reputation and career has been

18    irreparably tarnished, diminishing the value of Plaintiff's works, and decreasing

19    revenue derived from his work.

20           30.    By their unauthorized use of the Design, Defendants have wrongfully

21    appropriated for themselves business, revenue, and goodwill value that properly

22    belongs to Plaintiff, and that Plaintiff has invested time, money, skill, and energy in

23    developing. Defendants have intentionally traded, and infringed upon Plaintiff's

24    work, and the Design.

25           31.    By virtue of Defendants' acts hereinabove described, Defendants have

26    committed, and continue to commit, violations of, inter alia, 15 U.S.C. § 1125(a).

27           32.    Defendants' acts of unfair competition in violation of 15 U.S.C. §

28    1125(a) have caused, and will continue to cause, damage and irreparable harm to

COMPLAINT

Plaintiff (as described above) and are likely to continue unabated, thereby causing further damage and irreparable harm to Plaintiff, and to the goodwill associated with the valuable and well-known Design, and Plaintiff's business relationships, unless preliminarily and permanently enjoined and restrained by the Court. Plaintiff has no adequate remedy at law and will suffer irreparable injury if Defendants are allowed to continue to wrongfully continue the conduct herein described.

33.     In committing these acts of unfair competition, Defendants acted willfully, wantonly, and recklessly; and with conscious disregard for Plaintiff's rights. Plaintiff is therefore entitled to punitive damages.

34.     Plaintiff is entitled to all remedies available under the Lanham Act, including, but not limited to, preliminary and permanent injunctions, compensatory damages, treble damages, disgorgement of profits, costs and attorney's fees.

## Second Claim for Relief for Cancellation of Federal Trademark Registration
### (Against All Defendants)

35.     Plaintiff incorporates by this reference all prior paragraphs as if set forth in full in this cause of action.

36.     Plaintiff has been continuously using the atom Design on goods, including, but not limited to, apparel.

37.     Defendant's trademark registration has injured and will continue to injure Plaintiff by causing the public to be confused or mistaken into believing that Defendant's goods were designed by, or otherwise affiliated with Plaintiff.

38.     Accordingly, Defendant's use of its registered mark described above will damage Plaintiff because Defendant's mark is likely, when used on or in connection with the goods and services described in the subject registration, to cause confusion, or to cause mistake or to deceive. Thus, Defendant's mark should not have been registered and is unregistrable under Sections 2(d) and 3 of the United

COMPLAINT

States Trademark Act, as amended, 15 U.S.C. §§1052 and 1053. Accordingly, such registration should be cancelled.

**Third Claim for Relief for Unfair Business Practices Under**

**California Business and Professions Code §§ 17200 et seq.**

**(Against All Defendants)**

39.    Plaintiff incorporates by this reference all prior paragraphs as if set forth in full in this cause of action.

40.    Defendants, by means of the conduct above, have engaged in, and are engaging in, unlawful, unfair, fraudulent and deceptive business practices under California Business and Professions Code §§ 17200 et seq. These acts and practices undertaken by Defendants violate California Business & Professions Code § 17200 in that they are—as described above—unfair, fraudulent, and/or unlawful. Specifically, without limiting the generality of the foregoing, such acts and practices constitute violations of the Lanham Act, and are and were fraudulent in that: (a) Defendants seek to deceive consumers regarding the source, quality and origin of Defendants' goods and Defendants' association with Plaintiff, and (b) the general public and trade is likely to be confused regarding the business relationship between Plaintiff and Defendants. Further, without limiting the generality of the foregoing, the harm to Plaintiff and to members of the general public far outweighs the utility of Defendants' practices and, consequently, Defendants' practices constitute an unfair business act or practice within the meaning of Business and Professions Code § 17200.

41.    Plaintiff has sustained, and will continue to sustain, serious and irreparable injury to their businesses and reputations, as a direct and proximate result of Defendants' conduct (as described above).  Unless Defendants are enjoined by this Court, there is a substantial possibility that they will continue to engage in such unlawful, unfair, and deceptive business practices, for which Plaintiff is

COMPLAINT

1    without an adequate remedy at law. Accordingly, Plaintiff is entitled to a

2    preliminary injunction and permanent injunction against Defendants and their

3    officers, directors, employees, agents, representatives, affiliates, subsidiaries,

4    distributors, and all persons acting in concert with them, prohibiting them from

5    engaging in further unlawful, unfair and/or fraudulent business practices.

6         42.    As a direct result of Defendants' unlawful, unfair, fraudulent, and

7    deceptive business practices, Defendants have received, and continue to receive,

8    income and profits that they would not have earned but for their unlawful, unfair,

9    and deceptive conduct and Plaintiff is entitled to disgorgement of such funds

10    wrongfully obtained.

11         43.    By reason of Defendants' acts of unfair competition as alleged herein,

12    Plaintiff has suffered and will continue to suffer substantial damage to Plaintiff's

13    business in the form of diversion of trade, loss of profits, and a dilution in the value

14    of their rights and reputation, all in amounts which are not yet ascertainable but

15    which are estimated to be not less than the jurisdictional minimum of this court.

16         44.    Plaintiff is also entitled under the provisions of Business and

17    Professions Code §17208 to an injunction prohibiting Defendants, and each of them,

18    from engaging in any act, directly or indirectly, which constitute unlawful, unfair,

19    and deceptive business practices.

20         45.    In committing these acts of unfair competition, Defendants acted

21    willfully, wantonly, and recklessly; and with conscious disregard for Plaintiff's

22    rights. Plaintiff is therefore entitled to punitive damages.

23         46.    Defendants' conduct, if allowed to proceed and continue and/or let

24    stand, will cause irreparable damage to Plaintiff's valuable business relationships

25    and consumer relations and will require Plaintiff to undertake efforts to mitigate

26    damage to such relations, all to Plaintiff's detriment. Further, such mitigation costs

27    will require substantial time, effort, and expenditures by Plaintiff, all to Plaintiff's

28    detriment.

COMPLAINT

## Fourth Claim for Relief for Unfair Competition Under

## California Common Law

## (Against All Defendants)

47.     Plaintiff incorporates by this reference all prior paragraphs as if set forth in full in this cause of action.

48.     The above-described conduct of Defendants constitutes unfair competition under the common law of the State of California.

49.     As a result of the actions of Defendants, Plaintiff has been damaged in an amount to be proven at trial.

## PRAYER

WHEREFORE, Plaintiff prays judgment against Defendants as follows:

1.     That Plaintiff is awarded all damages, including future damages, that Plaintiff has sustained, or will sustain, as a result of the acts complained of herein, subject to proof at trial;

2.     That Plaintiff is awarded his costs, attorneys' fees and expenses in this action;

3.     That Plaintiff is awarded pre-judgment interest;

4.     For an order permanently enjoining Defendants and their employees, agents, servants, attorneys, representatives, successors, and assigns, and any and all persons in active concert or participation with any of them, from engaging in the misconduct referenced herein;

5.     That Defendants be ordered to immediately recall and remove any and all infringing products from the marketplace;

6.     That Defendants be ordered to file with this Court and serve upon Plaintiff's counsel within thirty (30) days after services of the judgment demanded herein, a written report submitted under oath setting forth in detail the manner in which they have complied with the judgment;

COMPLAINT

7.     That Defendants be adjudged to have engaged in unlawful, unfair and/or fraudulent business practices and unfair competition in violation of California Business and Profession Code §§ 17200 et seq.;

8.     For disgorgement of all proceeds, and restitution of the moneys wrongfully received by Defendants as the result of their wrongful conduct;

9.     For punitive damages in an amount sufficient to deter Defendants, and each of them, from their wrongful conduct; and

10.    For further relief, as the Court may deem appropriate.

DATED: January 12, 2021                    GLUCK LAW FIRM P.C.


                                           By: _____/s/_____
                                               Jeffrey S. Gluck
                                               Attorney for Plaintiffs

COMPLAINT

1

# DEMAND FOR JURY TRIAL

2        Plaintiff hereby demands a jury trial on their claims on all issues triable by a

3  jury.

4

5  DATED: January 12, 2021              GLUCK LAW FIRM P.C.

6

7                                 By:  _____/s/_____

8                                      Jeffrey S. Gluck
                                       Attorneys for Plaintiffs

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28