UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No.: | 2:21-cv-00269-SB (PDx) | Date: | 6/1/2021 |
|---|---|---|---|

| Title: | *Leonard McGurr v. The North Face Apparel Corp., et al.* |
|---|---|

| Present: The Honorable | **STANLEY BLUMENFELD, JR., U.S. District Judge** |
|---|---|

| Victor Cruz | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Appearing | None Appearing |

**Proceedings:**     **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS
[DKT. NO. 24]**

Before the Court is the motion to dismiss filed by Defendants The North Face Apparel Corp. (North Face) and V.F. Corp. (Mot., Dkt. No. 24.) Plaintiff Leonard McGurr opposes. (Opp., Dkt. No. 25.) Defendants have filed a reply. (Reply, Dkt. No. 26.) For the reasons below, the Court **GRANTS** the motion.

## I.     BACKGROUND

Plaintiff Leonard McGurr, professionally known as Futura, is a renowned graffiti and street artist. (First Amended Compl. (FAC) ¶¶ 1, 19.) Over the course of his career dating back to the 1970's, Plaintiff has become known for a recurring signature design element: "a particular stylized depiction of an atom" (the Design). (*Id.* ¶ 2.)

Plaintiff uses the Design in numerous ways. Plaintiff's work utilizing the Design has been exhibited in contemporary art museums across the world and is currently the subject of two solo shows in New York. (*Id.* ¶¶ 1, 20-21.) Plaintiff

also uses the Design as a logo, placing it on apparel he sells to identify himself as the source.  (*Id.* ¶¶ 2, 23.)  The Design has also been used as a sticker, meant to serve as a work of art itself and as a promotional device.  (*Id.* ¶ 26.)  In addition to his own use of the Design, Plaintiff has collaborated with brands such as Nike, Uniqlo, and BMW to use the Design in conjunction with items such as apparel, footwear, and surfboards.  (*Id.* ¶¶ 3, 21.)  The Design is not fixed but rather appears in myriad variations.  (*See, e.g.*, *id.* ¶¶ 1-4.)  Here are a few examples:



(*Id.* ¶ 24.)

In 2019, North Face launched a new clothing line called "FUTURELIGHT." (*Id.* ¶ 3.)  FUTURELIGHT utilizes a fabric technology making the clothing breathable and waterproof.  (*Id.* ¶ 4, 39.)  Plaintiff alleges that Defendants have used the Design as the logo without his consent.  Below are two examples of the FUTURELIGHT logo:



(*Id.*)[1]

On January 12, 2021, Plaintiff initiated this lawsuit alleging three causes of action for unfair competition under the Lanham Act, California Business and Professions Code, and California common law.  (Compl., Dkt. No. 1.)  Plaintiff also brought a single cause of action for cancellation of Defendants' federal trademark registration.  (*Id.*)  After Defendants moved to dismiss, Plaintiff filed his FAC, omitting the claim for cancellation and adding a new legal theory:  "Fluid Trademarks."  (FAC ¶¶ 28-38.)  Defendants filed the instant motion on April 26, 2021.

## II.   <u>LEGAL STANDARD</u>

Under Rule 12(b)(6), a defendant may move to dismiss for failure to state a claim upon which relief can be granted.  A plaintiff must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim has "facial plausibility" if the plaintiff pleads facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In resolving a Rule 12(b)(6), a court must accept all well-pleaded factual allegations as true, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. That is, a pleading must set forth allegations that have "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  Courts "'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).  Assuming the veracity of well-pleaded factual allegations, a court next must "determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. There is no plausibility "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Id.*

## III.   <u>DISCUSSION</u>

Plaintiff's FAC brings three separate unfair competition claims under the Lanham Act (Count 1), California Business and Professions Code § 17200 (Count

---

[1] In this lawsuit, Plaintiff focuses on the alleged misappropriation of the spherical atomic symbol and not on the use of that symbol along with the word "FUTURELIGHT."

2), and California common law (Count 3).  "Plaintiff agrees that all his claims require ownership of a valid trademark, and thus that they need not be separately analyzed for purposes of this motion."  (Opp. at 3 n. 2.)  A trademark is a source identifier that is statutorily defined to include "any word, name, symbol, or device, or any combination thereof . . .  used by a person . . . to indicate the source of the goods, even if that source is unknown."  15 U.S.C. § 1127.

Defendants primarily attack Plaintiff's FAC on the ground that the Design does not function as a source identifier.  Specifically, Defendants contend that the Design is not a valid mark because:  (1) it is aesthetically functional (Mot. at 5-7); (2) it is merely ornamental based on its size, location, and dominance on the goods on which it is placed (*id.* at 7-8); (3) it does not identify a "secondary source" (*id.* at 8-10); and (4) it is purely artwork (*id.* at 10-11).  Courts generally treat these inquiries as questions of fact inappropriately decided at the pleading stage.  *See, e.g.*, *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 637 (7th Cir. 2001) (finding trademark use to implicate questions of fact); *Application of Swift & Co.*, 223 F.2d 950, 954 (C.C.P.A. 1955) (finding "the line distinguishing between mere ornamentation and ornamentation which is merely an incidental quality of a trademark is not always clearly ascertainable" and thus requiring "the merits of each case . . . must be individually and accordingly adjudged"); *W. Brand Bobosky v. Adidas AG*, 843 F. Supp. 2d 1134, 1143 (D. Or. 2011) ("Whether a plaintiff uses a designation merely as ornamentation or also to indicate origin is a question of fact.").

However, Defendants also argue that Plaintiff's FAC must be dismissed because he does not use his Design in a consistent fashion.  (Mot. at 12-19.)  As the FAC demonstrates, the Design is not a singular design but instead the representation of a concept with a limitless number of iterations.  Plaintiff's FAC states that he "was an early adopter of a 'fluid trademark'—i.e. one with different iterations that feature enough of a family resemblance that the target audience can recognize it in all its variation."  (FAC ¶ 28.)  Plaintiff asserts that fluid trademarks "are all the rage" and cites examples used by publisher Alfred A. Knopf, Google, and the MIT Media Lab.  (*Id.* ¶¶ 29-32.)  Plaintiff also alleges that another prominent artist, Takashi Murakami, uses a fluid trademark.  (*Id.* ¶ 33.)

Plaintiff cites no legal authority endorsing a theory of fluid trademarks.  Nor is this Court independently aware of any judicial or USPTO finding of trademark protection based on a collection of similar but different designs.  In his FAC, Plaintiff suggests that "Elite IP law firms" have endorsed this theory.  (*See* FAC ¶ 34 (citing Perry J. Viscounty, et al., *Fluid Trademarks: All Fun, or Some Risk?*,

INTELLECTUAL PROPERTY TODAY (Feb. 4, 2014),
https://www.lw.com/thoughtLeadership/fluid-trademarks-all-fun-or-some-risk).)
Plaintiff also cites an article published by the Association of Corporate Counsel.
(*Id.* (citing Lisa Pearson & Jared S. Welsh, *Fluid Trademarks: Dynamic Brand
Identities for Dynamic Times,* ASSOCIATION OF CORPORATE COUNSEL (Aug. 27,
2013), https://www.acc.com/resource-library/fluid-trademarks-dynamic-brand-
identities-dynamic-times).)  Even if this Court were to consider these secondary
sources, they appear to undermine Plaintiff's position.  As the articles make clear,
to the extent that a theory of fluid trademarks is legally viable, it must be based on
a foundational, valid trademark.  *See* Viscounty, *supra* at 27  ("[T]here is no
established path for [] obtaining a trademark registration covering multiple
variations of an underlying mark, which is what would be required to obtain
registration in a fluid mark."); *id.* at 31 (describing best practices as "ensur[ing]
that the underlying mark is strong" and to register the mark); *see also* Pearson,
*supra* (also describing best practices as "Start[ing] with A Strong Mark" and to
"Register the Underlying Mark").  Plaintiff does not offer any underlying mark,
registered or otherwise.

Plaintiff contends that "there are no formal limitations on what can function
as a trademark." (Opp. at 7 (citing 15 U.S.C. § 1127).)  And he is correct that
things such as colors, flavors, and fragrances can be trademarks if they are non-
functional and serve as a source identifier.  *See, e.g.*, *Qualitex Co. v. Jacobson
Prods. Co.*, 514 U.S. 159, 174 (1995) (recognizing trademark in green-gold color
dry cleaning press pad).  However, Plaintiff cannot seek refuge in this broad
principle.  At bottom, Plaintiff seeks trademark protection of a style:  he describes
the Design as a "stylized depiction" giving him a unique "brand of urban cool."
(FAC ¶¶ 2-3, 19.)  Plaintiff's oeuvre, as presented in this lawsuit, is not within the
realm of trademark law.  *See EMI Catalogue P'Ship v. Hill, Holliday, Connors,
Cosmopulos Inc.*, 228 F.3d 56, 63 (2d Cir. 2000) ("[Trademark law] does not
protect the content of a creative work of artistic expression as a trademark for
itself.  Copyright law protects the artist's right in an abstract design or other
creative work.") (citation omitted).  Indeed, the FAC makes this point.  While
Plaintiff argues that signature artistic elements like Van Gogh's haystacks or
signature styles such as Jackson Pollack's ordinarily are not source identifiers for
the purposes of trademark law, he concludes that contemporary art, especially
street art, is different.  (FAC ¶ 22.)

While contemporary art differs in style, it is a difference of no legal
significance on the facts of this case.  Plaintiff does not purport to have a single
distinctive identifier that serves as his trademark.  Instead, he asserts trademark

protection to control the commercial use of a spherical atomic symbol. This assertion is extraordinary in its seemingly boundless application—boundless because the purportedly protected symbol need not be accompanied by any word, name, product, or any other source identifier to run afoul of the alleged trademark, and boundless because the design of the spherical atomic symbol is "fluid." *See Louis Vuitton Malletier v. Dooney & Burke, Inc.*, 454 F.3d 108, 116 (2d Cir. 2006) (noting that "[b]asic geometric shapes, basic letters, and single colors are not protectable as inherently distinctive").[2] Plaintiff's novel theory of fluid trademarks, if permitted as proposed here, would give new meaning to federal trademark law with far-reaching consequences.

## IV.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' motion. If a court dismisses certain claims, "[l]eave to amend should be granted unless the district court 'determines that the pleading could not possibly be cured by the allegation of other facts[.]'" *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009) (quoting *Lopez v. Smith*, 203 F.3d 1122, 112 (9th Cir. 2000) (en banc)); *see also* Fed. R. Civ. P. 15(a). At the hearing, Plaintiff sought leave to amend his pleading to specify a distinctive mark, composed of a symbol next to his commercially famous name. Plaintiff claims that the misappropriation of this unique mark violates federal trademark and state unfair-competition laws. In light of the "extreme liberality" standard applicable to amendment requests, the Court finds that leave to amend is appropriate. *See Morongo Band of Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990). The Court therefore **GRANTS** Plaintiff leave to amend. Should Plaintiff wish to file a Second Amended Complaint, he must do so no later than June 14, 2021.

---

[2] The facts in *Louis Vuitton Malletier* serve as a useful point of contrast. There the court found that Louis Vuitton had a trademark in a new "Multicolore" mark styled on the brand's famous "Toile Monogram, featuring entwined LV initials with three motifs: a curved diamond with a four-point star inset, its negative, and a circle with a four-leafed flower inset." 454 F.3d at 112. The Second Circuit concluded: "Vuitton's Multicolore mark, consisting of styled shapes and letters—the traditional Toile mark combined with the 33 Murakami colors—is original in the handbag market and inherently distinctive." *Id.* at 116.